# EXCLUSIVE MEDIA EVENT AGREEMENT

This Rights Agreement (this *"Agreement"*) is entered into as of **9/01/15 (the "Effective Date")**, by and between **FloSports, Inc.**, a Corporation based in Texas with its principal place of business at 2922 East Cesar Chavez, Austin, Texas (*"FloSports"*), and **National Holiday Duals** *("Event")*, Jack Harcourt *("Event Promoter")*.

WHEREAS, The Event Promoter hosts the annual event.

WHEREAS, FloSports is in the business of, among other things, providing streaming and or TV broadcasts;

WHEREAS, The Event Promoter hosts the annual Event and solely controls the rights to take pictures, film, broadcast, stream and/or otherwise record the Event;

WHEREAS, FloSports is a media company that takes pictures, films, streams or broadcasts and/or otherwise records athletic events and

WHEREAS, the parties desire for FloSports to be the media company covering the Event with rights to film, broadcast, stream and/or otherwise record the Event.

NOW THEREFORE, in consideration of the promises and covenants hereinafter set forth and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. **DEFINITIONS.**
   a) **"Event"** means the event entitled National Holiday Duals or any event hosted by sponsor that is substantially similar or serves as a replacement for such event whether or not similarly named.

   b) **"Recordings"** means any competition video, interview video, or other video captured at the location of the Event.

2. **TERM.** The term of this Agreement commences on the Effective Date and ends on the date that is Fifty-Five (55) months following the Effective Date (the **"Initial Term"**).

3. **RIGHTS FEE.** FloSports agrees to pay Event Promoter a rights fees of $7,500 over 55 months for the Event. $1500 in 2015, $1500 in 2016, $1500 in 2017, $1,500 in 2018, and $1,500 in 2019. Event Promoter will invoice FloSports and FloSports will make the payment within 30 days after the completion of the Event.

4. **OPTION PERIOD.** FloSports has the right to terminate this Agreement within 3 months after the completion of each years Event.

EXHIBIT A

5. **INTERNET.** It is the Event Promoter's responsibility to secure the necessary internet. FloSports will supplement internet cost up to $3000 per Event. This will be paid on November 1st of each year upon request of the Event Promoter through the FloSports invoice system.

6. **FLOSPORTS PROMOTION.** FloSports will provide $5,000 of advertisements/year for the Event on FloWrestling using a variety of the following methods including; On air video mentions, skins, drop down, home page banners, social media, tournament previews etc.

7. **EVENT PROMOTION.** The Event Promoter shall use the following methods to promote the FloSports live production of the Event.

   a) Prominently link of the live stream recording with an image above the fold on the homepage of the Event Promoter's website. FloSports is required to provide the image link to be used.

   b) Email Blast with link to live coverage.

   c) Relevant Social Media posts at Event Promoters discretion

   d) PA announcements every hour.

8. **HOTELS.** The Event Promoter will provide two hotel rooms for the FloSports production team.

9. **PERMISSION TO RECORD.** Event Promoter hereby consents to and grants FloSports the exclusive right to record and capture each of the Events during the Term. Event Promoter shall use its best efforts to ensure FloSports full access to the Event and reasonably cooperate with FloSports in providing all necessary assistance and information to facilitate the Recordings.

10. **EXCLUSIVE MARKETING RIGHTS.** Event Promoter hereby grants to FloSports the exclusive right and license to sell, broadcast, distribute, video and/or other content of each of the Events and interviews and other coverage related to such Events ("**Content**").

11. **LICENSE TO RECORDINGS.** FloSports will make available any reasonable request by Event Promoter for use of certain Recordings or portions thereof for Event Promoter's internal use and for the promotion and advertisement of the Event.

12. **VOLUNTEERS.** Event will provide one camera operator per mat for the duration of the event.

13. **SOFTWARE INTEGRATION.** If the tournament software used by the Event is not deemed ideal for FloSports broadcast integration and video consumption, FloSports has the

right to change the tournament software of the Event while incurring all direct costs associated with the change.

14. **RIGHT OF FIRST REFUSAL.** A. During the term of this Agreement and for a period of one (1) year after any termination or expiration of this Agreement ("ROFR Term"), upon receiving any bona fide offer from a third party to provide services after such termination or expiration similar to the services provided under this Agreement in connection with the Event, Event Promoter must provide FloSports with prompt written notice of the terms and conditions of the proposed offer, including without limitation the fees and consideration to be paid, any license or ownership terms, and the identity of the proposed third party provider. FloSports shall be granted a period of sixty (60) days following the later to occur of (i) receipt of such notice, or (ii) the termination or expiration of this Agreement, to match, or offer similar or equivalent terms to, the material terms in the offer ("Right of First Refusal"). If FloSports does not agree to the material terms in, or offer similar or equivalent terms to the material terms of, the offer, then upon expiration of the sixty (60)-day period, Event Promoter shall be free to negotiate with that third party, and to conclude such services agreement, on the terms tendered to FloSports.

15. **MISCELLANEOUS**
    a) <u>Relationship of the Parties</u>. The relationship between the parties is that of independent contractors. The relationship between the parties shall not under any circumstance be deemed to be a joint venture, employment or relationship of confidence or trust or a fiduciary relationship.

    b) <u>Amendment</u>. No waiver, amendment or other modification of any provision of this Agreement shall be effective unless in writing and signed by both parties.

    c) <u>Severability</u>. In the event a provision contained herein is held to be unlawful or unenforceable, such provision shall be severable from the remaining provisions of this Agreement, which shall remain in full force and effect.

    d) <u>Successors and Assignees</u>. This Agreement may be assigned by either party without the consent of the other party and shall be binding on each party's respective successors and assigns; <u>provided, however</u>, that any assignee of Event Promoter must hold the same rights, title and interest as Event Promoter in and to the Event, as reasonably determined by FloSports. A transfer of the Event by Event Promoter to another party shall not relieve Event Promoter of its obligations under this Agreement.

    e) <u>Governing Law</u>. This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of the State of Texas, without regard to conflicts of law principles that would require the application of any other law, and regardless of where the parties hereto may now or hereafter reside, be organized or do business.

    f) <u>Entire Agreement</u>. This Agreement (including all the schedules and exhibits hereto) contains the terms of the entire agreement among the parties with respect to the subject matter hereof and supersedes any and all prior agreements, commitments,

understandings, discussions, negotiations or arrangements of any nature relating thereto (including, but not limited to, any email communications between the parties).

IN WITNESS WHEREOF, each of the parties has executed this Agreement as of the Effective Date.

_____  9/3/15         _____  9/2/15
Martin Floreani          Date           Jack Harcourt            Date

CEO                                     National Holiday Duals.